UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 10-23085-CV-JLK

THE HENNEGAN COMPANY,

    Plaintiff,

v.

CARLOS ARRIOLA and
GRAFIKA GROUP, LLC,

    Defendants.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a case about a large, national company that, when faced with the fallout of the economic crash of 2008, commenced a reduction in force. Dozens of employees were fired. A climate of distrust began to permeate the corporate culture. This distrust soon grew into actionable suspicions of a salesman in the Miami office. Even though the salesman was not bound by any confidentiality or non-compete agreements, the company started to look for evidence of disloyalty to justify his termination and eliminate his substantial compensation. Less than a year later, the company fired the salesman while he was visiting corporate headquarters in Kentucky. The salesman's Miami office was raided; computers and files were seized.

Yet, upon meticulous inspection of the salesman's files, no evidence to support the company's suspicions of the salesman's disloyalty or betrayal could be found. Even after ten

months of formal discovery in this case, the only evidence the plaintiff company presented at trial was that the defendant salesman had received commissions for the referral of two customers to a competitor of the company. The uncontested evidence revealed, however, that both of the customers, despite the salesman's best efforts, had rejected doing business with the company for reasons unrelated to pricing—that it was not until after these rejections and upon request of the customers, that the salesman made the referrals. The uncontested evidence was that the company was unable to satisfy specific requirements particular to these customers. The plaintiff company now seeks injunctive relief, forfeiture of the defendant salesman's compensation, and the disgorgement of the defendant salesman's profits for his referral of customers that the company was unable to satisfy. In turn, the defendant salesman seeks unpaid commissions and damages for items removed from the Miami office.

## I. Procedural History

On August 26, 2010, Plaintiff The Hennegan Company ("Hennegan"), a national printing and production company, filed an initial Complaint (DE #1) against Defendant Carlos Arriola ("Arriola"), Hennegan's former executive, and Defendant Grafika Group, LLC ("Grafika"), Arriola's own company, alleging misappropriation of trade secrets, breach of fiduciary duty of loyalty, tortious interference with customers, and civil conspiracy. On September 7, 2010, Hennegan filed an Amended Complaint (DE #10) that included a claim of deceptive trade practices pursuant to the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201. On December 10, 2010, Arriola and Grafika answered

the Amended Complaint, and Arriola asserted counterclaims against Hennegan for breach of contract, unjust enrichment, civil theft, and conversion. (DE #33-1). Hennegan answered the counterclaims on December 20, 2010. (DE #35).

In mid-September, 2010, Hennegan filed an Emergency Motion for Preliminary Injunction (DE #14), arguing that a preliminary injunction was necessary to prevent Arriola and Grafika from continuing to use Arriola's knowledge of Hennegan's client list and pricing to solicit Hennegan's clients. Arriola and Grafika responded to the motion, opposing the preliminary injunction on the premise that Arriola and Grafika currently work only with clients with whom Arriola has had a personal and longstanding relationship. (DE #18). On October 5, 2010, this Court held a hearing on Hennegan's Emergency Motion for Preliminary Injunction, during which the Court reserved ruling on the matter pending the filing of additional exhibits. (DE #20). In addition, the Court ordered Hennegan to submit an order on the hearing, and ordered the Parties to submit a proposed briefing schedule on the matter. (*Id.*). For over two months, none of the Parties took any action on the hearing. On December 22, 2010, the Court ultimately entered the Scheduling Order, allowing over ten months for discovery and setting a November 7, 2011 deadline for the filing of all motions. (DE #36).

Over the next ten months, the Parties engaged in discovery, and filed various discovery motions, a majority of which sought protective orders regarding the discovery of non-parties' alleged trade secrets. By the November 7, 2011 motions deadline, none of the Parties had filed motions for summary judgment.

On February 21 and 22, 2012, the Court conducted a bench trial in the above-styled action to determine liability and damages for Hennegan's claims of deceptive trade practices, misappropriation of trade secrets, and breach of fiduciary duty of loyalty, as well as liability and damages for Arriola's counterclaims for breach of contract, unjust enrichment, civil theft, and conversion. (DE #105&106). At the close of evidence, the Court ordered the Parties to file trial briefs prior to closing arguments. (DE #106). Hennegan, Arriola, and Grafika filed their respective trial briefs (DE #107&108) on February 28, 2012, and, on February 29, 2012, the Court heard closing arguments in the matter. (DE #109).

Before the Court now are Hennegan's claims that Arriola and Grafika violated the FDUTPA (Count I); misappropriated Hennegan's trade secrets in violation of Florida's Uniform Trade Secrets Act, FLA. STAT. §688.001 (Count III); breached the fiduciary duty of loyalty (Count II); tortiously interfered with Hennegan's customers (Count IV); and conspired (Count V). Hennegan seeks disgorgement of profits, forfeiture of compensation, and injunctive relief, along with attorney's fees and costs. With his counterclaims, Arriola seeks unpaid commissions, treble damages for the alleged civil theft of his files and computers, as well as attorney's fees and costs. Prior to commencement of trial, Plaintiff estimated its attorney's fees at approximately $325,000.00, and Defendants estimated their attorney's fees at approximately $275,000 to $325,000. (Pretrial Stip., DE #102, at 8).

## II. Findings of Fact

Hennegan is a provider of specialized and high quality printing and production services and products to customers throughout the United States. For almost ten years, Arriola was a trusted and highly-compensated management-level employee at Hennegan, where he operated Hennegan's Miami office and was Hennegan's top salesman nationally for over eight years. Arriola's job was to market Hennegan's printing services to customers and potential customers around the country. To market Hennegan's services, Arriola's job required him to promote the reputation of Hennegan throughout the marketplace, and to form relationships with customers for repeat business. Once a job was secured, Arriola maintained good relations with the customer and provided customer service and quality assurance by attending "press checks" with the client at Hennegan's printing plant. Hennegan paid 5% in commission to Arriola for the print jobs he secured and saw through to completion.

Hennegan shared its price and customer lists with Arriola, without placing any restrictions on the dissemination of the lists. Arriola was free to discuss the pricing lists with customers. Hennegan and Arriola did not execute a confidentiality or non-compete agreement.

In 2009 and 2010, sales from Hennegan's Miami office dropped severely—decreasing from approximately $11,000,000 in 2008 to slightly less than $1,000,000 in the first seven months of 2010. At this time, Hennegan began to suspect that Arriola was being disloyal. An email admitted at trial evidenced that as early as October of 2009, Hennegan was trying to

build a case against Arriola by asking Arriola's secretary, Elizabeth Rodriguez, for details on Arriola's communications with a potential customer, Preferred Care.

Then, on August 10, 2010, Hennegan terminated Arriola without any notice when Arriola was visiting Hennegan headquarters in Kentucky. While Arriola was being fired in Kentucky at Hennegan headquarters, other Hennegan officers and a company attorney were in Miami at Arriola's office seizing Arriola's files and computers. Upon the termination of Arriola, Hennegan withheld payment of various commissions. Specifically, Hennegan withheld $54,492.92 in commissions on jobs that were sold and printed before Arriola was terminated, but for which Hennegan was not paid until after Arriola's termination.[1] In addition, Hennegan did not pay $12,899.00 in commission to Arriola for a job for Mayors Jewelers that Arriola secured prior to his termination, but that was not completed until after the termination. Arriola did not complete the "press checks" for these Mayors Jewelers job.

At trial, Hennegan offered the following evidence to substantiate Hennegan's suspicions of Arriola's disloyalty. In September 2009, while still working for Hennegan, Arriola established a separate company, Grafika, that marketed printing services. Arriola used Hennegan's Miami office and Hennegan's office equipment to facilitate his work for

---

[1] The Court received conflicting testimony from Carlos Arriola and Dennis Purcell, an executive at Hennegan, on the amount of commission owed for the completed jobs. Mr. Purcell, whom the Court found to be credible, testified that Hennegan provided partial payment on the unpaid commissions. In contrast, Mr. Arriola testified that he did not receive this alleged partial payment. Ultimately, the Court determined that Mr. Arriola's testimony carried more weight where Hennegan failed to substantiate Mr. Purcell's testimony of partial payment with evidence that should be in Hennegan's possession, such as a receipt, paystub, tax documentation, or check stub.

Grafika. The bulk of the evidence regarding Arriola's and Grafika's brokering activities centered on Arriola's relationship with Solo Printing ("Solo"), a competitor of Hennegan.

Arriola testified that in less than one year he referred over $1,000,000 of business to Solo, and earned over $300,000 in commissions. In addition, pursuant to Arriola's relationship with Solo, Solo employed Elizabeth Rodriguez, Arriola's personal secretary at Hennegan's Miami office. Elizabeth Rodriguez testified that she worked for and was paid by Solo outside of the time she was paid by Hennegan to work as Arriola's secretary.

With regard to specific instances of Arriola referring customers to Solo, the evidence at trial of focused on two customers: Preferred Care and Regent Cruises. For Preferred Care, Arriola referred the work to Solo because the client specifically wanted the print work to be done in South Florida and Hennegan did not have a printing plant in South Florida. In 2009, a representative at Preferred Care approached Arriola to discuss print work because Arriola's mother was a client of Preferred Care. Upon this discussion, in June and July of 2009, Arriola submitted bids on behalf of Hennegan to Preferred Care. Preferred Care then expressly rejected Hennegan's bids because Preferred Care insisted that its print work be performed in South Florida, a requirement that Hennegan could not satisfy as it did not have printing plants in South Florida. When Arriola communicated Preferred Care's requirement for local printing to Daniel Bailey, president of Hennegan, Mr. Bailey responded that Hennegan had no need to establish a fulfillment house in South Florida. After it became clear that Hennegan could not meet Preferred Care's requirement of local printing, Preferred Care asked Arriola

to recommend a printer with a plant in South Florida. Upon this request, in the fall of 2009, Arriola submitted bids on behalf of Solo. Preferred Care accepted Solo's bid and paid Arriola a commission for the referral.

With regard to Regent Cruises, personal reasons on behalf of a Regent Cruises' executive impeded any further business relationship between Hennegan and Regent Cruises. Regent Cruises' new chief executive, who had an unfavorable relationship with Arriola's brother, ordered its director of marketing to stop doing business with Hennegan. This decision and order occurred before Regent Cruises asked Arriola to refer Regent Cruises to a local printer.

Other evidence at trial demonstrated that the profits from the Miami office dropped as a result of the declining economy. In one instance, Hennegan's Miami office lost Volkswagen as a printing client when Volkswagen ended its relations with its Miami-based advertizing agency. In another, Arriola was unable to secure Toyota as a client because Hennegan did not want to expend the resources to support Arriola's efforts to sign Toyota. Despite Arriola's suggestions that Hennegan lower its prices or open a printing plant in South Florida, Hennegan continued its business practices as it had prior to the economic crash.

### III. Conclusions of Law

In the above-styled case, Hennegan, a printing and production services company, alleges that a former top salesman, Arriola, used confidential price lists belonging to Hennegan to start his own company, Grafika, to serve as a broker between various printing

and production services companies and targeted clientele. Specifically, Hennegan asserts claims of misappropriation of trade secrets (Count III), violation of FDUTPA (Count I), breach of the fiduciary duty of loyalty (Count II), tortious interference with business relationships (Count IV), and civil conspiracy (Count V). Arriola has counterclaimed for breach of contract, unjust enrichment, civil theft, and conversion. The Court will address each count in turn.

### A. *Misappropriation of Trade Secrets (Count III)*

Hennegan claims that Arriola misappropriated its pricing information in violation of Florida's Uniform Trade Secret Act, FLA. STAT. § 688.001 *et seq.* To establish a claim for misappropriation under Florida's Uniform Trade Secret Act, Hennegan must prove that: "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy; and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing FLA. STAT. § 688.002). In addition, "[t]o qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." *Id.* "[I]f the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." *Id.* The party claiming trade secret protection has the burden to show how the information qualifies as a trade secret. *See*

9

*generally Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1190 (10th Cir. 2009) (summarizing trade secret law under the Oklahoma Uniform Trade Secrets Act, which is identical to Florida's Uniform Trade Secrets Act).

Here, the Court finds that Hennegan did not offer sufficient evidence of its efforts to protect the secrecy of Hennegan's pricing information. To the contrary, the evidence revealed that Hennegan provided Arriola with the pricing information and permitted him to share that information with potential customers without requiring those customers to refrain from disclosing the pricing information to others. In addition, Hennegan did not require Arriola to execute a confidentiality agreement with Hennegan. Accordingly, the Court finds that the pricing lists do not qualify as trade secrets where Hennegan did not take reasonable steps to maintain the confidentiality or limit the dissemination of the pricing information. *See, e.g., id.* (holding price list was a not a trade secret despite employee's execution of confidentiality agreement where plaintiff did not take reasonable steps to maintain confidentiality of price list, such as placing limitations on customer's dissemination of the information, so that a competitor could not acquire the information by simply requesting it from the customer).

## B. *FDUTPA (Count I)*

Hennegan alleges that Arriola's secret referrals to Solo qualify as deceptive acts in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.200 *et seq.* (2006).[2] (Am. Compl. ¶ 26, DE #10). FDUTPA declares unlawful "unfair

---

[2] In addition, Hennegan alleges that Arriola acted deceptively by misusing Hennegan's confidential pricing lists. As the Court has previously rejected Hennegan's

or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1). There are three elements for a FDUTPA claim for damages: 1.) a deceptive act or unfair practice; 2.) causation; and 3.) actual damages. *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 96 (Fla. Dist. Ct. App. 2008). Under FDUTPA, a "deceptive act" is "one that is likely to mislead consumers and an unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Washington v. LaSalle Bank Nat'l Ass'n.*, --- F. Supp. 2d ---, 2011 WL 4792881, at *3 (S.D. Fla. 2011). Further, causation must be direct, rather than remote or speculative. *See e.g.*, FLA. STAT. § 501.211(2) ("In any action brought by a person who has suffered a loss *as a result of* a violation of this part . . . may recover actual damages.") (emphasis added). "Actual damages" under FDUTPA must directly flow from the alleged deceptive act or unfair practice. "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Mortg. Corp.*, 988 So. 2d at 86 (internal citation omitted). Given the evidence at trial on the context of Arriola's referrals to Solo, the Court finds that Hennegan has failed to produce evidence necessary to support a FDUTPA claim.

Although Arriola did not tell Hennegan about his other referral work, the Court finds that the secret referrals do not qualify as "deceptive acts" under FDUTPA. For instance,

---

contention that the pricing lists qualify as confidential trade secrets, *see supra* Part III.A., the Court, without elaboration, also rejects Hennegan's FDUTPA claim insofar as it relies on the alleged misuse of the price lists.

Hennegan and Arriola never executed a non-compete agreement, therefore Arriola had the right to work independently as long as his work did not cause any financial harm to Hennegan. As a result, the Court finds that Arriola was not deceptive in referring these customers to Solo without disclosing such referrals to Hennegan.

With regard to causation and damages, the evidence at trial established that the customers rejected Hennegan's bids prior to Arriola's submission of bids on behalf of Solo, and that Arriola and Grafika took nothing of value from Hennegan. Specifically, Hennegan was unable to provide local printing as required by Preferred Care, and an executive at Regent Cruises refused to work with Hennegan for personal reasons. Only when those customers expressly rejected Hennegan for reasons unrelated to pricing, and requested that Arriola refer them to a local printer, did Arriola do so. The evidence showed that Arriola acted in good faith and did not usurp any business opportunity that was available to Hennegan. Further, Hennegan did not lose the Preferred Care or Regent Cruises business because of misconduct by Arriola. Rather, the uncontradicted testimony was that there were never business opportunities with these customers for Hennegan. Accordingly, absent any evidence that either Preferred Care or Regent Cruises would have accepted Hennegan's bids but for the actions of Arriola and Grafika, the Court finds that Hennegan has failed to present sufficient evidence of causation and actual damages necessary to prove a claim under FDUTPA.

### C. *Breach of the Fiduciary Duty of Loyalty (Count II)*

Hennegan alleges that Arriola breached his fiduciary duty of loyalty to Hennegan by soliciting customers on behalf of himself and Hennegan's competitors.[3] (Am. Compl. ¶ 33, DE #10). "Breach of fiduciary duty requires proof of (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages proximately caused by the breach." *Silver v. Countrywide Home Loans, Inc.*, 760 F. Supp. 2d 1330, 1338 (S.D. Fla. 2011) (citing *Gracey v. Eaker*, 837 So. 2d 348 (Fla. 2002)). A fiduciary relationship may be either express, such as by contract, or implied "based on the specific factual circumstances surrounding the transaction and the relationship of the parties." *First Nat'l Bank & Trust Co. v. Pack*, 789 So. 2d 411, 414 (Fla. Dist. Ct. App. 2001).

Here, Hennegan argues that Arriola breached his fiduciary duty of loyalty when he "successfully solicited his subordinate, Ms. Rodriguez," "solicited Hennegan customers repeatedly while still employed by Hennegan," and "us[ed] Hennegan's substantial support an [sic] resources." (DE #107, at 6; Am. Compl. ¶¶ 33(e)–(f), DE #10). The Court finds that Hennegan's proof fails to establish a breach of Arriola's fiduciary duty of loyalty. The law is clear that although Arriola could not have usurped one of Hennegan's business opportunities for himself, he was free, absent the existence of a non-compete agreement, to

---

[3] Here, too, Hennegan alleges that Arriola violated his fiduciary duty of loyalty by misusing Hennegan's confidential pricing lists. Again, where the Court has previously rejected Hennegan's contention that the pricing lists qualify as confidential trade secrets, *see supra* Part III.A., the Court, without elaboration, also rejects Hennegan's fiduciary duty claim insofar as it relies on the alleged misuse of the price lists.

"engag[e] in another business enterprise similar to but separate from the fiduciary beneficiary if he is in good faith and refrains from interference with the business of the beneficiary." *Cohen v. Hattaway*, 595 So. 2d 105, 109 (Fla. Dist. Ct. App. 1992). As previously discussed at length, the evidence at trial revealed that it was only after Preferred Care and Regent Cruises rejected doing business with Hennegan that Arriola referred them to Solo. Further, the Court finds that any Hennegan resources Arriola used to court Preferred Care were used to further Arriola's efforts to forge a relationship between Hennegan and Preferred Care. Based on this evidence, the Court finds that Arriola acted in good faith when he referred out the business of customers after Hennegan was unable or unwilling to satisfy specific requirements of those customers. Accordingly, the Court finds that Hennegan has presented insufficient evidence to support its claim of breach of the fiduciary duty of loyalty.

### D. *Tortious Interference with Customers (Count IV)*

Hennegan's tortious interference claim alleges that Arriola "interfered in Hennegan's business relations with its customers by soliciting and encouraging those customers to do business with Hennegan's competitors, including Grafika." (Am. Compl. ¶ 46, DE #10). To prevail on its claim for tortious interference, Hennegan must prove: "(1) The existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Harlee v. Prof'l Serv. Indus., Inc.*, 619 So. 2d 298, 299–300 (Fla.

14

Dist. Ct. App. 1993) (citing *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). Again, the evidence at trial made clear that there was no existing business relationship between Hennegan and Preferred Care and Regent Cruises with which Arriola could have interfered. To the contrary, Arriola made significant efforts to forge business relationships between Hennegan and Preferred Care and Regent Cruises that failed for reasons unrelated to pricing. Accordingly, the Court finds that Hennegan has failed to prove its claim for tortious interference with customers.

### E. *Civil Conspiracy (Count V)*

In Count V of the Amended Complaint, Hennegan alleges that Arriola and Grafika were co-conspirators to achieve the claims previously discussed by the Court. (Am. Compl. ¶ 50, DE #10). Subsequent to trial, Hennegan conceded it failed to allege liability against a co-conspirator so as to render the civil conspiracy count redundant of the underlying claims. (DE #107, at 11–12). Accordingly, the Court finds that Hennegan has failed to establish a claim for civil conspiracy.

### F. *Arriola's Counterclaims*

Arriola has counterclaimed for breach of contract, unjust enrichment, civil theft, and conversion. The breach of contract and unjust enrichment claims refer to two classes of unpaid commissions: the first is for sales that Arriola orchestrated and completed prior to his termination; the second is for sales that Arriola orchestrated prior to his termination, but that were completed by another salesman after Arriola's termination. Upon careful consideration

of the evidence at trial, the Court concludes that Arriola is entitled to all unpaid commissions sought in his counterclaims for breach of contract and unjust enrichment.

With regard to the former class of unpaid commissions, Arriola testified that there were $54,492.92 in unpaid commissions for jobs that Arriola sold and completed before he was terminated. Hennegan concedes that Arriola earned the unpaid commissions on jobs that were sold and completed before Arriola was terminated. Hennegan argues, however, that Arriola is not entitled to these commissions because, even though Hennegan customarily pays such commissions to a terminated salesperson, Arriola forfeited these commissions when he breached his fiduciary duty of loyalty. As the Court has previously rejected Hennegan's breach of fiduciary duty of loyalty claim, the Court necessarily rejects Hennegan's argued justification for withholding the unpaid commissions. Accordingly, the Court finds that Arriola is entitled to the $54,492.92 sought for the unpaid commissions for jobs started and completed prior to his termination.

Likewise, the Court determines that Arriola is entitled the $12,899.00 in unpaid commissions sought for the Mayors Jewelry job he began but was unable to complete personally due to his termination. Hennegan argues that Arriola does not deserve these commissions because Arriola did not personally see the job through where another salesman had to take over and complete the "press checks". Although the evidence at trial revealed that Arriola did not complete the "press checks" for the Mayors Jewelry job, the Court finds that Arriola is entitled to the commissions because he would have been able to complete the job,

including the "press checks," had Hennegan not terminated Arriola without notice for reasons not prohibited by his employment.

With regard to the civil theft and conversion claims, Arriola seeks treble damages for Hennegan's alleged theft of Arriola's files and computers when Hennegan raided the Miami office upon Arriola's termination. Upon consideration of the evidence at trial, the Court finds that the civil theft and conversion claims are tangential to the central issue of this case. The Court further finds that any theft was unintentional, and that the claims are unsubstantiated given Hennegan's attempts to return the files and computers. Accordingly, the Court rejects Arriola's counterclaims for civil theft and conversion.

## VI. Conclusion

Upon extensive review of the evidence presented at trial and the elements of the causes of action asserted, the Court finds that Arriola and Grafika are not liable to Hennegan for any of the claims asserted. The Court finds that the facts developed at trial, in particular the chronology of the bids submitted by Arriola and evidence of the conversations Arriola had with Hennegan executives regarding Preferred Care's specific requirements, reveal that Arriola acted in good faith throughout his employment with Hennegan. Further, the Court finds the overarching fact that both Preferred Care and Regent Cruises rejected Hennegan prior to any referrals to Solo to be fatal to the bulk of Hennegan's claims. Moreover, based on these findings, Hennegan's arguments as to why Arriola does not deserve his unpaid commissions necessarily fail.

Accordingly, having considered the evidence presented at trial and being otherwise advised, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1. With respect to Counts I, II, III, IV, and V, the Court finds in favor of Defendants Carlos Arriola and Grafika Group, LLC and against Plaintiff The Hennegan Company.

2. With respect to Defendants' counterclaims for breach of contract and unjust enrichment, the Court finds in favor of Defendants Carlos Arriola and Grafika Group, LLC and against Plaintiff The Hennegan Company.

3. With respect to Defendants' counterclaims for civil theft and conversion, the Court finds in favor of Plaintiff The Hennegan Company and Against Defendant Carlos Arriola.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida on this 29th day of March, 2012.

/s/ James Lawrence King
JAMES LAWRENCE KING
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

cc:

*Counsel for Plaintiff*

**Courtney Blair Wilson**
Littler Mendelson
2 S Biscayne Boulevard
Suite 1500 One Biscayne Tower
Miami, FL 33131-1804
305-400-7500
Fax: 603-2552
Email: CWilson@littler.com

*Counsel for Defendants*

**George G. Mahfood**
Broad and Cassel
2 S Biscayne Boulevard
One Biscayne Tower, 21st Floor
Miami, FL 33131
305-373-9427
Fax: 305-995-6437
Email: gmahfood@broadandcassel.com

**Jarrett Wolf**
The Law Firm of Jarrett Wolf, P.A.
1000 Brickell Avenue
Suite 1020
Miami, FL 33131
305-377-8006
Fax: 786-472-7228
Email: jwolf@jarrettwolf.com

**Sanjiv Sudheer Desai**
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
305-373-9400
Fax: 305-995-6392
Email: sdesai@broadandcassel.com